**FILED**

March 15, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ AA

DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

|  |  |  |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Case No. 2:23-CV-00024-AM |
| ALEJANDRO MAYORKAS, | § | |
| Secretary of Homeland Security, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated:     March 15, 2024          Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*

EREZ REUVENI
*Counsel*

CHRISTINA P. GREER
BRIAN C. WARD
*Senior Litigation Counsel*

By: /s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS (*pro hac vice*)
*Senior Litigation Counsel*
DC Bar No. 978141
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Fax: (202) 305-7000
Email: katherine.j.shinners@usdoj.gov

ELISSA P. FUDIM
*Trial Attorney*

*Attorneys for Defendants*

Plaintiff, the State of Texas, challenges a rule promulgated by the Departments of Homeland Security (DHS) and Justice (DOJ) (collectively, "the Departments") that limits the circumstances in which noncitizens can obtain asylum. *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314 (May 16, 2023) (the "Rule"); Circumvention of Lawful Pathways, 88 Fed. Reg. 11,704, 11,708 (proposed Feb. 23, 2023) (notice of proposed rulemaking (NPRM)). Plaintiff contends that the Rule—which imposes a limit on asylum eligibility for certain noncitizens—will increase the number of noncitizens residing in Texas, causing the State to suffer injury. This argument fails for several independent reasons. The Supreme Court has recently recognized that States lack any cognizable interest in the federal government's enforcement of the immigration laws and has also cautioned against recognizing state standing in any context based on such attenuated theories of injury. Even on their own terms, Texas's claims to injury are fundamentally flawed given that the Rule imposes a limit on eligibility for asylum for certain noncitizens and thus could not be expected to increase the overall number of noncitizens entering the State of Texas.

Further, Plaintiff's complaints about other aspects of the immigration system referenced in the Rule could not be redressed through relief against the Rule. Any relief Plaintiff requests pertaining to the Rule would not impact the release of noncitizens on parole, as the Rule does not govern parole determinations or set any policies relating thereto. Moreover, the Immigration and Nationality Act (INA) bars the coercive relief Plaintiff seeks, which would prohibit application of an exception in the Rule in expedited removal or removal proceedings. Nor can Plaintiff obtain relief directly prohibiting grants of parole to noncitizens after they arrive at a port of entry (POE) pursuant to a pre-scheduled appointment, as this would impermissibly interfere with DHS's discretionary authority to grant parole. Additionally, Plaintiff is not within the zone of interests protected by the pertinent provisions of the INA.

Even if Plaintiff's Complaint could withstand these threshold hurdles, it should be dismissed for failure to state any viable claim. Plaintiff's challenges in Counts 1 and 2 to the Rule's appointment exception under the Administrative Procedure Act (APA) are without merit because the Rule—including the challenged exception—reflects a considered, reasonable approach to addressing irregular migration that is well within the Departments' statutory authority and duties, and the Departments considered relevant factors in adopting this approach. Plaintiff's new allegations in Count 3 about DHS's parole practices should likewise be dismissed because DHS is acting well within its broad, discretionary authority if it grants parole to noncitizens who enter at POEs, and because Plaintiff has not identified a discrete agency action or policy concerning parole that could be subject to challenge under the APA.

## BACKGROUND

<u>Processing Under Title 42 and Title 8.</u> From March 20, 2020, until May 11, 2023, most noncitizens without documents sufficient for entry who sought to enter the United States at its southwest land and adjacent coastal borders—whether or not at a designated POE—were subject to expulsion under a series of public health orders issued by the Centers for Disease Control and Prevention to combat the COVID-19 pandemic (Title 42 Orders). *See* Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021). Under the Title 42 Orders, covered noncitizens were generally not permitted to cross the border to enter the United States at POEs and, if encountered in the United States, were generally expelled to Mexico or their home countries without processing under the immigration authorities at Title 8, including processing for asylum. *See id.*; ECF 30, First Am. Compl. (FAC, or "Complaint") ¶ 9.

Under the INA—that is, absent the Title 42 Orders—noncitizens in the United States without documents sufficient for entry are required to be processed under the INA's substantially more resource-intensive procedures. *See* 8 U.S.C. § 1101 *et seq.* Such noncitizens, whether they present at a POE or are encountered after crossing irregularly between POEs, are deemed applicants for admission and must be inspected by immigration officers. *See* 8 U.S.C. § 1225(a)(1), (3).[1] Applicants for admission who upon inspection are determined to be inadmissible because they are not in possession of a valid travel document may be subject to expedited removal procedures. *See* 8 U.S.C. § 1225(b)(1)(A). Congress has provided that noncitizens who are in the United States may generally apply for asylum, a form of discretionary relief from removal based on a fear of persecution on account of a protected ground. 8 U.S.C. § 1158(a), (b)(1)(A); *see also id.* § 1101(a)(42). Congress has also mandated that noncitizens may not be removed to a country where their life or freedom would be threatened because of a protected ground or they would be tortured. 8 U.S.C. § 1231(b)(3) (statutory withholding of removal); Pub. L. No. 105-277, div. G, § 2242 (Oct. 21, 1998) (codified at 8 U.S.C. § 1231 note), 8 C.F.R. §§ 208.16(c), 208.17(a), 208.18, 1208.16(c), 1208.17(a), 1208.18 (protection under the Convention Against Torture (CAT)).

Thus, if a U.S. Customs and Border Protection (CBP) officer determines upon inspection at a POE that a noncitizen is subject to expedited removal procedures, the noncitizen may be removed without further hearing or review, unless they indicate an intent to apply for asylum or a fear of persecution or torture, in which case CBP refers them to asylum officers for a credible fear interview to assess any persecution and torture claims. 8 U.S.C.

---

[1] While entering the country outside a port of entry is a crime, 8 U.S.C. § 1325, even "an alien who tries to enter the country illegally is treated as an 'applicant for admission,'" *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020).

§ 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30. If the noncitizen demonstrates at the credible fear interview a significant possibility that they could establish eligibility for asylum, statutory withholding of removal, or CAT protection, they are either retained by the asylum officer for further review of their asylum application, or placed in removal proceedings under 8 U.S.C. § 1229a before an immigration judge of the Executive Office for Immigration Review (EOIR), where they may apply for asylum or other protection as a defense to removal. 8 U.S.C. § 1225(b)(1)(B)(ii), (v); 8 C.F.R. §§ 208.30(c)–(g), 1208.2(b). Upon inspection at a POE, CBP officers also have discretion to process undocumented noncitizens for other appropriate dispositions instead of expedited removal, including referring them directly to Section 1229a removal proceedings before EOIR, which are commenced by issuance of a "notice to appear." *See* 8 U.S.C. §§ 1225(b)(2)(A), 1229a(a)(1); *Matter of E-R-M-*, 25 I. & N. Dec. 520, 521–24 (BIA 2011); FAC ¶ 58 (1st).[2]

CBP officers further have discretion to parole inadmissible noncitizens into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," regardless of whether they are processed for expedited removal or Section 1229a removal proceedings. *See* 8 U.S.C. § 1182(d)(5)(A). Parole is generally permissible for noncitizens subject to expedited removal "whose continued detention is not in the public interest" as determined by DHS officials, provided they do not present a national security, public safety, or flight risk. 8 C.F.R. §§ 212.5(b)(5), 235.2(c), 235.3(b)(2)(iii), 235.3(b)(4)(ii).

The Rule. In early 2023, the President announced that the public health emergency would end on May 11, 2023, which would cause the then-operative Title 42 Order to terminate. FAC

---

[2] At page 13 of the Complaint, the paragraph numbering goes from 61 back to 44. FAC at 13. Thus, as applicable, citations to paragraphs 44-61 will indicate whether they are intended to cite to first set of such paragraphs "(1st)" or the second set of such paragraphs "(2d)".

¶ 10; 88 Fed. Reg. at 11,708. Absent further action, the end of the Title 42 Order was expected to cause the number of migrants seeking to irregularly enter the United States at the southwest border to surge to or remain at all-time highs—an estimated 11,000 migrants daily. 88 Fed. Reg. at 31,331. The Departments thus faced a looming urgent situation: absent policy change, the end of the Title 42 Order would result in many more migrants crossing the border and asserting protection claims, which would in turn overwhelm DHS's ability to process migrants in a safe, expeditious, and orderly way and lead to an increase in the number of noncitizens released into the country. To prevent this expected situation, the Departments promulgated the Rule, following an NPRM, a 33-day comment period, and review of 51,952 comments. 88 Fed. Reg. at 31,314, 31,324; *see also* 88 Fed. Reg. at 11,704; FAC ¶¶ 11, 28–29. The Rule has been in effect since May 11, 2023, and it provides that most noncitizens who enter the United States during the following two years at the southwest land border or adjacent coastal borders after traveling through a country other than their country of citizenship or nationality are subject to a rebuttable presumption of ineligibility for asylum unless they avail themselves of certain orderly processes for entry into the United States or seek and are denied protection in that third country. 88 Fed. Reg. at 31,321-23. The presumption of asylum ineligibility applies to asylum determinations in any context, including in removal proceedings and in credible fear screenings. 8 C.F.R. §§ 208.13(f), 1208.13(f), 208.33(b), 1208.33(b). The Rule was enacted under the Departments' authority to "by regulation establish limitations and conditions . . . under which an alien shall be ineligible for asylum." 8 U.S.C. § 1158(b)(2)(C); *see also id.* § 1158(d)(5)(B).

Specifically, the Rule provides that "[a] rebuttable presumption of ineligibility for asylum applies to an alien who" "enters the United States from Mexico at the southwest land

border or adjacent coastal borders without documents sufficient for lawful admission" "and whose entry was[:]" (1) "[b]etween May 11, 2023, and May 11, 2025," (2) "[s]ubsequent to the end of implementation of the Title 42 public health Order," and (3) "[a]fter the alien traveled through a country other than the alien's country of citizenship [or] nationality." 8 C.F.R. §§ 208.33(a)(1), 1208.33(a)(1). The presumption does not apply to unaccompanied children or to those who used certain orderly pathways or processes for entry into the United States or meaningfully sought protection in a third country—namely, those who were "provided appropriate authorization to travel to the United States to seek parole, pursuant to a DHS-approved parole process"; "[p]resented at a port of entry, pursuant to a pre-scheduled time and place"; "presented at a port of entry without a pre-scheduled time and place" but who can "demonstrate[] by a preponderance of the evidence that it was not possible to access or use the DHS scheduling system"; or "[s]ought asylum or other protection in a country through which the noncitizen traveled and received a final decision denying that application." *Id.* §§ 208.33(a)(2), 1208.33(a)(2). Noncitizens subject to the presumption of asylum ineligibility may rebut the presumption by demonstrating "exceptionally compelling circumstances." *Id.* §§ 208.33(a)(3), 1208.33(a)(3). Noncitizens subject to presumptive ineligibility and unable to overcome the presumption must still be considered for statutory withholding of removal and CAT protection. *See* 8 C.F.R. §§ 208.33(b)(2), 1208.33(b)(2)(ii), (4); 88 Fed. Reg. at 31,318.

In short, the Rule aims to reduce irregular entry between POEs, by encouraging migrants to seek asylum or protection in other countries and incentivizing the use of orderly and lawful pathways to enter the United States by conditioning the discretionary grant of asylum on noncitizens' availing themselves of such pathways (or demonstrating exceptionally compelling circumstances). A reduction in irregular migration will correspondingly decrease

crowding in border facilities, lessen projected severe strains on DHS border resources that could ultimately lead to more releases, and facilitate safe, humane processing. *See, e.g.*, 88 Fed. Reg. at 31,235, 31,324, 31,328.

   Although the Rule thus provides incentives to use various pathways for safe, orderly, and lawful entry, those pathways were not created by the Rule and exist independently of it. The currently existing lawful pathways include, but are not limited to, refugee processing abroad under 8 U.S.C. § 1157, certain country-specific processes to obtain authorization to travel by air to the United States and to seek parole upon arrival, and expanded seasonal employment opportunities. 88 Fed. Reg. at 31,317. Those migrants who have already traveled to Mexico with the intent of entering the United States can also avoid the presumption of asylum ineligibility under the "appointment exception" by pre-scheduling an appointment to present at a POE (rather than irregularly entering between POEs or waiting at a POE). 8 C.F.R. §§ 208.33(a)(2)(ii)(B), 1208.33(a)(2)(ii)(B) (providing for an exception for those covered noncitizens who "[p]resent[] at a port of entry, pursuant to a pre-scheduled time and place"). Currently, DHS uses the existing, multi-function CBP One app to allow noncitizens to schedule a time to arrive at POEs for orderly processing. 88 Fed. Reg. at 31,317. For this purpose, CBP One allows "[n]oncitizens located in Central or Northern Mexico who seek to travel to the United States . . . to submit information in advance and schedule an appointment to present themselves at" eight southwest-border POEs instead of entering irregularly between POEs or waiting at the POE, which contribute to strains on border enforcement and congestion of POEs. *See* Advance Submission and Appointment Scheduling, https://www.cbp.gov/about/mobile-apps-directory/cbpone (last visited Mar. 15, 2024); 88 Fed. Reg. at 31,332; FAC ¶¶ 25–27, 31, 36, 39–44. Using appointments allows POEs to manage the flow into the POE of noncitizens

without documents sufficient for admission, efficiently allocate border enforcement resources, and streamline processing, thus reducing overall burdens on immigration enforcement at the border. 88 Fed. Reg. at 31,318. The Rule does not dictate processing or detention outcomes for those that schedule an appointment; all the Rule provides is that its presumption of asylum ineligibility will not apply to such noncitizens. *See generally* 8 C.F.R. §§ 208.33(a), 1208.33(a).

In July, a U.S. District Court in California vacated the Rule based on claims brought by immigration legal services organizations, *East Bay Sanctuary Covenant v. Biden*, 2023 WL 4729278 (N.D. Cal. July 25, 2023), but that order has been stayed pending appeal. *See E. Bay Sanctuary Covenant v. Biden*, No. 23-16032 (9th Cir. Aug. 3, 2023). That appeal is currently in abeyance. *E. Bay Sanctuary Covenant v. Biden*, 93 F.4th 1130 (9th Cir. 2024).

This Lawsuit. On May 23, 2023, Plaintiff filed this lawsuit seeking to enjoin the Rule in its entirety. ECF 1. On February 6, 2024, Plaintiff filed its First Amended Complaint, which challenges the Rule's appointment exception at 8 C.F.R. §§ 208.33(a)(2)(ii)(B), 1208.33(a)(2)(ii)(B), rather than the entirety of the Rule, under the APA. FAC ¶¶ 30, 54(2d)– 86. The new Complaint adds a count that asserts that DHS exceeds its statutory authority by granting discretionary parole to noncitizens who schedule appointments using CBP One. FAC ¶¶ 87–103. Plaintiff contends that it is harmed because—notwithstanding that the Rule imposes consequences in the form of asylum ineligibility on those who enter without appointments or between POEs and aims to reduce the strain on immigration enforcement—the  appointment system invites noncitizens to enter and be released into the United States, and will allegedly result in increased noncitizens in Texas, which will in turn lead to increased public expenditures and economic harms. FAC ¶¶ 44–53 (2d). Plaintiff seeks an injunction and vacatur of the Rule's appointment exception, an injunction "prohibiting Defendants from paroling aliens who pre-

schedule a time and place to present at a port of entry using a DHS scheduling system," and a declaration that "Defendants' actions" are unlawful. FAC § VI (Demand for Relief).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "In applying Rule 12(b)(1), the district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Willoughby v. U.S. ex rel. U.S. Dept. of the Army*, 730 F.3d 476, 479 (5th Cir. 2013). Claims are subject to dismissal pursuant to Rule 12(b)(6) if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion should be granted if "it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

## ARGUMENT

I.    **The Complaint Should Be Dismissed for Lack of Jurisdiction Because Plaintiff Lacks Article III Standing.**

To establish standing, Texas must show that as of the filing of its Amended Complaint it has suffered or will imminently suffer an "injury in fact" "caused" by the challenged action that a favorable decision would "likely" "redress." *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560–61 (1992). Attenuated speculation is insufficient to establish standing, even at the pleading stage. *See id.* at 560-62, 570 n.5 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "When 'a

plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed' to establish standing." *United States v. Texas*, 599 U.S. 670, 678 (2023) (quoting *Lujan*, 504 U.S. at 562). Plaintiff's claimed incidental injury allegedly arising from the Executive's discretionary immigration enforcement policies is not cognizable under Article III, and its injuries cannot be redressed by the relief it seeks.

     **A.    The Complaint Does Not State a Cognizable Injury.**

    Here, Plaintiff's claimed harms—indirect impacts on its public fisc or economy from an alleged increase in the number of noncitizens released into Texas due to the Rule's appointment exception and the Executive's exercise of discretionary parole authority*, see* FAC at p.1 & ¶¶ 49 (1st), 54–55 (1st), 45–55 (2d)—are not cognizable injuries and are too speculative to establish Article III standing.

    As the Supreme Court recently held in *Texas*, States' allegations of indirect financial harm allegedly resulting from immigration enforcement policy are historically and categorically not cognizable injuries for the purposes of Article III standing. 599 U.S. at 677–81 & n.3. Third parties like Texas who are not the subject of the challenged regulation or policy have "no judicially cognizable interest in procuring enforcement of the immigration laws." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), *quoted in Texas*, 599 U.S. at 677. Just as the plaintiff States in *Texas* had no standing to challenge the Executive Branch's "enforcement discretion over arrests and prosecutions" based on allegations of indirect effects on revenue and spending, 599 U.S. at 677–81 & n.3, here, Plaintiff lacks a cognizable interest in the circumstances in which the Executive may confer the discretionary benefit of asylum. Plaintiff likewise cannot justify judicial intrusion into the Executive's decisions as to how to process applicants for admission (like noncitizens who present at POEs), including whether to use its discretionary parole authority, which are inherently discretionary immigration

enforcement decisions. *See, e.g.*, *Reno v. AADC*, 525 U.S. 471, 490–91 (1999); *Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985).

*Texas* stands for the principle that third parties like Texas lack a judicially cognizable interest in whether or how the Executive exercises its immigration enforcement discretion against someone else. 599 U.S. at 676–77. The challenged agency actions here—the Rule's incentivization of the use of orderly appointments through an exception to a condition on asylum eligibility and the Executive's exercise of discretionary parole authority at POEs—does not differ in any meaningful way from the prosecutorial discretion guidelines challenged in *Texas* for purposes of the standing analysis. Here, Congress has charged the Executive with discretion and responsibility to manage immigration enforcement, including through determining asylum eligibility and making parole determinations. *See* 6 U.S.C. § 202(4), (5) (charging DHS with responsibility for "establishing national immigration enforcement policies and priorities" and "administering rules . . . governing . . . parole"); 8 U.S.C. §§ 1103(a)(1), 1103(g), 1158(b)(2)(C), 1158(d)(5)(B). Each of the reasons the Supreme Court articulated in *Texas* to support its conclusion that the States lacked standing to challenge immigration enforcement guidelines—including that the discretionary immigration enforcement decisions at issue involve no exercise of coercive power over the plaintiff; that challenges to those decisions implicate Article II and foreign-policy concerns like those implicated in the Rule; and that courts lack "meaningful standards" to assess such decisions that reflect the Executive's "complicated balancing" of factors like "resource constraints" and "public-safety and public-welfare needs"—applies here. *See Texas*, 599 U.S. at 678–81; *see also Heckler v. Chaney*, 470 U.S. 821, 830–32 (1985).

But even if Plaintiff's alleged injury did not squarely fall under the reasoning in *Texas*, there are "bedrock Article III constraints in cases brought by States against an executive agency

or officer" even outside the immigration enforcement context. *Texas*, 599 U.S. at 680 n.3. Federal policies routinely have incidental effects on States' expenditures, revenues, and other activities, and the Supreme Court cautioned against recognizing such "attenuated" claims by States. *See id.* This case does not involve the sort of direct injury that might allow a State to sue in limited instances. *See, e.g.*, *Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that Florida lacked standing to challenge a federal inheritance tax because its claimed injury of "withdrawal of property" and resulting diminishment of tax base was "at most, only remote and indirect"); *Texas*, 599 U.S. at 685 n.6 (rejecting States' reliance on special solicitude and noting that *Massachusetts v. EPA*, 549 U.S. 497 (2007), involved a challenge to the denial of a statutorily authorized petition for rulemaking). Plaintiff's claimed "sovereign" injuries—a claimed pressure "to change its laws" or injury to its economy, *see* FAC ¶¶ 46, 49 (2d)—are even more attenuated and do not alter this analysis. The challenged federal actions do not directly interfere with Plaintiff's "power to create and enforce a legal code," as they do not amount to a "tangible interference with [its] authority to regulate or to enforce its laws." *Harrison v. Jefferson Parish School Board*, 78 F.4th 765, 770 (5th Cir. 2023). Any claimed pressure on Plaintiff to change its laws depends entirely on Plaintiff's own future response to the challenged actions' indirect and speculative impact on public expenditures.

Even if Plaintiff's claimed injury were cognizable, it is far too speculative to support standing. "Injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 517 (5th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560). The Rule imposes a limit on asylum eligibility for certain noncitizens who do not avail themselves of lawful pathways to entry into the United States or seek asylum or protection in a

third country, and that limitation makes coming to the United States less attractive for those without meritorious asylum claims. Texas's argument, apparently, is that the use of appointments to preschedule arrival at a POE might cause noncitizens to enter the United States who would not otherwise have done so. Even if that contention were correct (which Defendants do not concede), it would not provide any basis for challenging the Rule, which merely establishes adverse consequences of presumptive asylum ineligibility for certain noncitizens who enter the United States in other ways, such as unlawful entries between POEs. There is no basis for Plaintiff's extraordinary claim that dissuading noncitizens from entering the country unlawfully will somehow lead to adverse consequences that might arise from the presence of more unlawfully present noncitizens in the State. *Cf. Texas v. DHS (CHNV)*, No. 6:23-CV-00007, 2024 WL 1021068, at *16 (S.D. Tex. Mar. 8, 2024) (holding that injury relating to increased immigration must be viewed in context).

Plaintiff similarly cannot plausibly allege that noncitizens who make appointments—that is, migrants who have already traveled to Mexico from their home countries—would not otherwise enter and either evade detection or be released into the United States if the appointment exception did not exist. In fact, the very point of the Rule's appointment exception is to encourage migrants who have already traveled to Mexico and who might well cross the border irregularly to use orderly methods to present themselves to immigration officers at POEs. *See, e.g.*, 88 Fed. Reg. at 31,325. This approach helps reduce the severe strain on immigration resources caused by irregular border crossers, and indeed, an overwhelmed immigration enforcement system could well produce the very harm Plaintiff is concerned with—namely, "more noncitizens being released into the interior pending immigration proceedings." 88 Fed. Reg. at 31,328; *see also id.* at 31,325; FAC ¶ 46 (2d). Nor can Plaintiff rely on generalized allegations about the economic effects of immigration in the

abstract with no demonstrable connection to noncitizens who are granted parole, let alone to particular noncitizens who are granted parole after their arrival at a POE with a CBP One appointment. *See* FAC ¶¶ 45–55 (2d) (complaining generally of costs attributable to "illegal aliens" or "aliens"); *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) (finding no injury where state submitted evidence that "illegal immigration" increased costs but did not connect any increases to the particular policy challenged). Federal courts are not the proper venue for resolution of such diffuse and generalized complaints.

### B.    Plaintiff's Claimed Injury is Not Redressable.

Even if Plaintiff's alleged injury were cognizable, its claimed harms cannot be redressed by an order from this Court. "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation marks omitted). Plaintiff's injury must be "likely to be redressed by the requested relief." *Id.* at 669; *see also Lujan*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (cleaned up). Plaintiff seeks two categories of relief: (1) an injunction, vacatur, and declaration of the unlawfulness of the Rule's appointment exception, which corresponds to Counts 1 and 2, and (2) an injunction and declaration of the unlawfulness of grants of parole to those who pre-schedule appointments, which corresponds to Count 3. *See* FAC § VI. Plaintiff's claimed injury is not redressable by this relief. Relief against the Rule either would do nothing to alleviate the claimed harms stemming from the parole of noncitizens or is unavailable under the INA, and the relief Plaintiff seeks against grants of parole is likewise unavailable because it would direct the Executive's exercise of statutory discretion.

Counts 1 and 2 should be dismissed for lack of standing because relief pertaining to the Rule would not redress the claimed injury. *First*, any relief addressing the Rule's exception to the

presumption of asylum ineligibility for those who pre-schedule their arrival at a POE would not address the claimed source of Plaintiff's alleged harms: the parole of noncitizens after they arrive at a POE pursuant to a pre-scheduled appointment. Enjoining, vacating, or declaring unlawful the appointment exception would not restrain the use of appointments or the exercise of parole authority. CBP One and the ability to pre-schedule arrival at a POE were not created by the Rule and exist independently of it. *See* 88 Fed. Reg. at 31,317–18. Similarly, removing the appointment exception would have no impact on the availability of parole under 8 U.S.C. § 1182(d)(5)(A). An injunction or vacatur of this aspect of the Rule would not prevent immigration officers from exercising discretion to grant parole, if appropriate on a case-by-case basis, to noncitizens who are subject to the presumption of asylum ineligibility. "[R]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019); *see also California*, 593 U.S. at 671–72 (finding no redressability where any relief the court could grant would have no practical effect); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105-06 (1998) (finding no redressability where specific relief sought would not address the harms suffered).[3] Instead, the requested relief against the Rule's appointment exception would at most remove the incentive to use orderly methods of entry and would more likely contribute to the very harms that Plaintiff purportedly seeks to prevent, by taking away the Executive's carefully calibrated tool to *reduce* irregular migration.

*Second*, an injunction or vacatur of the appointment exception is not available because statutes preclude relief. As Justice Gorsuch recognized in his concurrence in *Texas*, where the

---

[3] Viewed another way, Plaintiff's claimed harms from the exercise of parole authority are not fairly traceable to the Rule. Just as in *California v. Texas*, where the plaintiff States' alleged injury arising from one statutory provision could not support a challenge to a different provision of the same statute, *see* 593 U.S. at 671, here, Plaintiff's alleged costs arising from parole—which Defendants do not concede—cannot support a challenge to the Rule's appointment exception.

relief sought is precluded by statute and there is no other effective judicial remedy, a court cannot redress the claimed injury. 599 U.S. at 690–93. And 8 U.S.C. § 1252(f)—which bars courts from "enjoin[ing] or restrain[ing] the operation of" sections 1221–1231 of Title 8—precludes injunctive relief interfering with the government's chosen means of operating sections 1225(b)(1), 1229a, and 1231, which are implemented by the Rule. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2064–65 (2022). The Rule's rebuttable presumption of asylum ineligibility is applicable in three contexts: affirmative asylum applications under § 1158, credible fear interviews under § 1225(b)(1), and removal proceedings under § 1229a. Vacating the appointment exception or enjoining its application in expedited removal procedures and section 1229a removal proceedings would interfere with the government's chosen means of implementing those statutes by preventing asylum officers from making a credible fear determination under § 1225(b)(1) in the manner prescribed by the Rule, by mandating how immigration judges determine whether a noncitizen has met their burden to demonstrate eligibility for relief from removal under § 1229a(c)(4)(A), and by interfering with the agencies' chosen means of implementing the statutory withholding of removal requirement under § 1231(b)(3). Although the Rule establishes limitations on and conditions to the grant of asylum under § 1158, it *operates* in expedited and section 1229a removal proceedings and is "the way that [sections 1225, 1229a, and 1231 are] being carried out." *Aleman Gonzalez*, 142 S. Ct. at 2064. Any injunction or universal vacatur thus would impermissibly compel agency adjudicators "to take actions that (in the Government's view) are not required by" sections 1225, 1229a, and 1231 or their implementing regulations, "and to refrain from actions that (again in the Government's view) are allowed by" those statutes. *Id.* at 2066. The Court likewise lacks jurisdiction to review rules implementing the expedited removal system or to issue injunctive relief affecting that system. *See* 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(1), (3); *Grace v. Barr*, 965 F.3d 883,

891 (D.C. Cir. 2020) (section 1252(e) covers "agency [regulations or] policies governing credible-fear interviews"). The Rule, including its appointment exception, "implements" the expedited removal system by "instruct[ing] asylum officers to apply the lawful pathways rebuttable presumption during credible fear screenings," and makes numerous other changes to expedited removal and credible fear procedures for those to whom the presumption applies. 8 C.F.R. §§ 208.33(b), 1208.33(b).

*Third*, the APA, 5 U.S.C. § 706(2), does not permit the primary relief Plaintiff seeks: universal vacatur of a regulation or portions thereof. That provision states that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary [and] capricious" or "otherwise not in accordance with law." 5 U.S.C. § 706(2). That provision does not authorize rendering an entire rule, or parts thereof, void. In fact, it does not pertain to remedies at all, which are governed by 5 U.S.C. § 703. Section 706(2) instead is a rule of decision governing judicial review that provides the substantive standard for finding agency action "unlawful"; the language "set aside" directs the reviewing court to disregard that unlawful action in resolving the case before it. To interpret section 706 to require universal vacatur of a regulation would allow a broad expansion of available remedies, upsetting the "bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, J., concurring); *see also California*, 593 U.S. at 672 (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract").

For these reasons, Plaintiff's challenge to the Rule's appointment exception cannot establish standing because relief related to the Rule is not likely to redress Plaintiff's claimed injury or is unavailable, and Counts 1 and 2 should be dismissed on this basis. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (plaintiffs must establish standing for each claim

raised); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.").

As to Count 3, Plaintiff seeks an injunction prohibiting Defendants from granting parole to any noncitizen who uses a DHS scheduling system to pre-schedule their presentment at a POE. FAC § VI(c). This relief is likewise legally unavailable. *See Texas*, 599 U.S. at 690–93 (Gorsuch, J., concurring); *cf. Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (to satisfy the redressability requirement, the court must be able to grant effective relief). Plaintiff's claim in Count 3 essentially challenges an amalgamation of thousands of individual parole decisions made pursuant to the Executive's discretionary parole authority at 8 U.S.C. § 1182(d)(5)(A). *See infra* § IV(A), (C). Federal courts may not review "decision[s] or action[s] … the authority for which is specified under this subchapter to be in the discretion of … the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The INA specifies that any decision whether to grant parole is "in [the] discretion" of the Secretary. 8 U.S.C. § 1182(d)(5)(A). Thus, courts cannot review decisions to grant parole. *See infra* § IV(A). As courts cannot review such claims, they also cannot direct the Executive's exercise of discretion by either compelling or prohibiting the discretionary grant of parole or declaring individual grants of parole unlawful. *See Giammarco v. Kerlikowske*, 665 F. App'x 24, 25–26 (2d Cir. 2016) (given § 1252(a)(2)(B)(ii), court may not order government to parole noncitizen); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) (similar). Because the Court cannot enjoin or declare unlawful grants of parole for  noncitizens who pre-schedule their arrival at a POE or direct the exercise of parole, the relief Plaintiff seeks as to Count 3 is unavailable and cannot remedy its claimed injury.

**II.     Texas is Not Within the Zone of Interests of the Relevant Immigration Statutes and Judicial Review is Not Available.**

Even if Plaintiff could establish Article III standing, its claims should be dismissed because Texas is not within the zone of interests protected by the relevant immigration statutes. The APA does not "allow suit by every person suffering injury in fact." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 395 (1987). It provides a cause of action only to a plaintiff "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To be "aggrieved" in that sense, "the interest sought to be protected by the complainant [must] be arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Clarke*, 479 U.S. at 396 (alteration and citation omitted). When a Plaintiff is not itself the object of the challenged regulatory action, it has no right of review if its "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 399.

The Rule sets a condition on eligibility under the asylum statute, 8 U.S.C. § 1158. *See* 88 Fed. Reg. at 31,323; *supra* at 5; *infra* § III(A). Nothing in the asylum statute—or the INA generally—evinces any concern with State sovereigns generally or any policy goal of reducing migration specifically. The opposite is true. *See* 8 U.S.C. § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). Thus, the interests Plaintiff seeks to vindicate do not fall within the zone of interests of the asylum statute.

Nor is Plaintiff within the zone of interests of the parole statute, 8 U.S.C. § 1182(d)(5)(A). *See* FAC ¶ 94 (alleging violation of parole statute); *Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) ("*FAIR*"). In *FAIR*, the D.C. Circuit held that an organization whose members were not the object of the parole statute could not bring its challenge

to a "scheme for parole" of inadmissible noncitizens because there was nothing in the "language of the statutes" nor the "legislative history that even hints at a concern about regional impact" of immigration on public services. *Id*. at 900–01. That reasoning squarely applies to Plaintiff's claim challenging DHS's use of parole for noncitizens who are processed at a POE after arriving with a CBP One appointment. *See* FAC ¶¶ 92–97.

Moreover, the INA carefully prescribes a scheme of judicial review of asylum and removal issues that affords only noncitizens—not States or other third parties—an opportunity to challenge certain types of decisions, and only through their removal proceedings. *See* 8 U.S.C. § 1252(a)(5), (b)(9), (e), (g); *Reno v. AADC.*, 525 U.S. at 486–87. Indeed, Congress has expressly committed parole decisions to DHS's discretion and made them unreviewable under § 1252(a)(2)(B)(ii), regardless of who seeks to challenge them. *See supra* § I(B); *infra* § IV(A). This statutory scheme demonstrates that Congress did not intend for "judicial review of those issues at the behest of other persons" to occur. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). The INA thus precludes Plaintiff's suit. 5 U.S.C. § 701(a)(1).

## III.    Counts 1 and 2 Do Not State Facially Valid APA Challenges to the Rule.

Even if Plaintiff could establish that it has standing or is within the zone of interests, its claims should be dismissed. The challenges in Counts 1 and 2 to the Rule's appointment exception fail as a matter of law and are subject to dismissal under Rule 12(b)(6). The allegations and the Rule itself demonstrate that the Rule is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The Rule is a lawful and reasonable exercise of rulemaking authority—expressly authorized by Congress—to create conditions on asylum eligibility, carefully designed to address an anticipated surge in migration

by noncitizens without documents sufficient for admission into the United States once the Title 42 Order ended.

### A. The Rule is Within the Departments' Statutory Authority and Does Not Conflict with DHS's Duty to Guard Against Illegal Entry.

Plaintiff claims in Count 1 that the Rule's appointment exception exceeds statutory authority because it contravenes the Departments' broad duties to guard against illegal entry of noncitizens. *See generally* FAC ¶¶ 56(2d)–72. This is incorrect as a matter of law. There is no question that the Departments have authority to place conditions on asylum eligibility in the first place, which necessarily means the authority to make exceptions to those conditions as well. Nor does the appointment exception contravene DHS's broad duties to guard against the illegal entry of noncitizens. Presenting for entry at a POE is not "illegal," and under the INA, noncitizens who are present in the United States, including those who enter at a POE, are permitted to seek asylum, even if inadmissible. Finally, Plaintiff cannot shoehorn its complaint about DHS's exercise of parole authority into a challenge to the Rule, which does not address parole.

First, contrary to Plaintiff's assertion, it is well within the Departments' statutory authority to promulgate the Rule and its appointment exception. *See* FAC ¶¶ 58 (2d), 66, 67. The Complaint entirely ignores that the asylum statute provides DHS and DOJ with express authority to promulgate limitations and conditions on asylum eligibility such as those set forth in the Rule. *See* FAC ¶¶ 57–58 (2d), 65; 88 Fed. Reg. at 31,323. That statute provides:

> Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

8 U.S.C. § 1158(a)(1). The asylum statute also sets forth conditions for grants of asylum and exceptions to eligibility. *See* 8 U.S.C § 1158(a)(2), (b). It further provides DHS and DOJ the

21

discretion whether to grant asylum and authorizes them to establish by regulation additional "limitations and conditions" on asylum eligibility beyond those set out in the statute, so long as they are "consistent with" § 1158. 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B). Consistent with this authority to establish "limitations and conditions" on asylum eligibility, the Departments promulgated the Rule, which imposes a rebuttable presumption on asylum eligibility. *See* 88 Fed. Reg. at 31,321-23, 31,449-52; 8 C.F.R. §§ 208.30, 208.33, 1003.42(d), 1208.30, 1208.33. Creating exceptions to newly imposed conditions on asylum eligibility is no different than calibrating the scope of those conditions in the first instance. *See, e.g.*, 8 C.F.R. §§ 208.13(b)(1)(iii), 1208.13(b)(1)(iii) (providing exceptions to the categorical discretionary denial of asylum based on absence of well-founded fear); Asylum Eligibility and Procedural Modifications, 85 Fed. Reg. 82,260 (Dec. 17, 2020) (adopting the now-defunct third-country-transit rule, which included an exception to asylum ineligibility for certain trafficking victims).

Plaintiff nonetheless argues that the Rule's appointment exception is without proper authority because it conflicts with DHS's power and duty under 8 U.S.C. § 1103(a)(5) to "guard the boundaries and borders of the United States against the illegal entry of aliens." FAC ¶ 56 (2d) (citing 8 U.S.C. § 1103(a)(5)), 61-62 (2d).[4] But § 1103 "places no substantive limits on the

---

[4] The Complaint also cites to 8 U.S.C. § 1103(g)(2), apparently to support the argument that DOJ has exceeded its statutory authority. FAC ¶¶ 58 (2d), 63. But that provision addresses the residual immigration authority of the Attorney General following the transfer of certain DOJ duties to DHS. *See* 88 Fed. Reg. at 31,323. The Secretary of Homeland Security has the authority to create regulations and take other actions "necessary for carrying out" his responsibilities under the immigration laws, including "the administration and enforcement of [the INA] and all other laws relating to the immigration and naturalization of aliens," except insofar as those laws assign functions to other agencies. 8 U.S.C. § 1103(a)(1), (3). The Attorney General, meanwhile, retains "such authorities and functions under [the INA] and all other laws relating to the immigration and naturalization of aliens as were [previously] exercised by [EOIR], or by the Attorney General with respect to [EOIR]" (which includes the conduct of removal proceedings and review of negative credible fear determinations in expedited removal) and to establish regulations and take other

[Executive] and commits enforcement of the INA to [its] discretion." *State of Tex. v. United States*, 106 F.3d 661, 667 (5th Cir. 1997). Section 1103(a)(5) sets out a broad duty that is within the Executive's discretion to manage and is not enforceable under the APA. *Chiles v. United States*, 69 F.3d 1094, 1096 (11th Cir. 1995) (holding that the duty in § 1103(a)(5) is committed to agency discretion by law). Accordingly, Plaintiff cannot state a claim that the Rule contradicts § 1103(a)(5)'s broad and flexible mandate.

In any event, the Rule is fully consistent with § 1103(a)(5). The Rule's appointment exception does not "invite" or "incentivize" illegal entry. *See* FAC ¶¶ 58 (2d), 64; 8 U.S.C. § 1103(a)(5). The relevant criminal statute defines "improper entry" as (1) entering or attempting to enter the United States at any time or place other than as designated by immigration officers, (2) eluding examination or inspection by immigration officers, or (3) attempting or obtaining entry to the United States through fraud. 8 U.S.C. § 1325(a). And regulations provide that applications "to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection." 8 C.F.R. § 235.1. Contrary to the Complaint's suggestion, *see* FAC ¶¶ 56 (2d), 58 (2d), 59 (2d), 61 (2d), presenting at a POE for inspection by immigration officers—except to attempt to obtain entry by fraud under § 1325(a)(3)—is not illegal under this statute. *United States v. Valencia-Mendoza*, 2020 WL 2198169, at *2 (W.D. Tex. May 6, 2020) (under 8 U.S.C. § 1325(a)(1), the government must prove that the defendant "entered at a place other than a designated port of entry"); *C.M. on behalf of D.V. v. United States*, 2023 WL 3261612, at *38 (W.D. Tex. May 4, 2023) (noting that plaintiff "bypassed the normal port of entry and entered the United States illegally"). Plaintiff is simply wrong to assert that the Rule and its

---

actions "necessary for carrying out" those responsibilities. 8 U.S.C. § 1103(g); 88 Fed. Reg. at 31,323.

exception invite "illegal" entries and run contrary to § 1103(a)(5) or (g). The Rule (and the use of CBP One) instead *discourages* irregular entry to the United States. *E.g.*, 88 Fed. Reg. at 31,317, 31,344.

Further, to the extent that Plaintiff is claiming that DHS lacks authority to use an appointment system at all, its challenge is misplaced and unsupported. *See* FAC ¶¶ 58 (2d), 60 (2d). The Rule does not create an appointment system or independently authorize appointments. The legal effect of the Rule's appointment exception is to instead create an exception to the Rule's presumption of asylum ineligibility for those who make appointments to present at a POE, so as to discourage migrants who have already traveled to Mexico with the intent of seeking entry to the United States[5] from entering between POEs or waiting at a POE. Further, appointments scheduled through CBP One assist CBP in balancing its multiple missions by enabling it to "manage the flows [of migrants] in a safe and efficient manner." 88 Fed. Reg. at 31,318. This means of managing travel into POEs certainly falls within DHS's and CBP's duties to manage POEs in a safe and orderly manner that balances competing priorities including combatting terrorism, managing individual entry, and ensuring orderly and efficient flow of lawful traffic and commerce. *See* 6 U.S.C. §§ 111(b)(1), 202, 211(c), (g)(3).

Finally, Plaintiff's argument that the parole of noncitizens who were also subject to the appointment exception exceeds the statutory parole authority (*see* FAC ¶ 69) is likewise misplaced, because Count 1 is a challenge to the Rule, and the Rule does not address eligibility for parole or the circumstances under which DHS will exercise parole authority under 8 U.S.C. § 1182(d)(5)(A). Neither the Rule nor its appointment exception dictate whether noncitizens who make

---

[5] The Rule does not apply to Mexican citizens, as its presumption of asylum ineligibility only applies to noncitizens who enter the United States after having "traveled through a country other than the alien's country of citizenship [or] nationality." 8 C.F.R. §§ 208.33(a)(1), 1208.33(a)(1).

appointments will be released on parole rather than expeditiously removed or detained pending proceedings. *See, e.g.*, 88 Fed. Reg. at 31,331 (the Rule does not "set any policy regarding DHS's discretionary authority to make parole determinations for those who use the CBP One app"). For these reasons, the Rule does not exceed statutory authority, and Count 1 should be dismissed.

### B.    The Rule is Reasonable and Considers Relevant Factors.

In Count 2, Plaintiff alleges that the Rule is arbitrary and capricious because the Rule will, contrary to its stated purpose, increase the number of "illegal aliens processed at the border," FAC ¶ 76, did not consider the effects the rule has on Texas, *id.* ¶ 77, "failed to consider whether it could achieve its goal through a less-burdensome or less-sweeping means," *id.* ¶ 83, does not require noncitizens to demonstrate that they would have otherwise crossed the border without authorization to avail themselves of the exception to the presumption of asylum eligibility, *id.* ¶ 84, and "conveys a benefit on aliens without documents sufficient for admission," *id.* ¶ 85–86. These arguments misconstrue the Rule and are insufficient to state a claim under the APA. The Rule— including its appointment exception—is "reasonable and reasonably explained" and easily withstands the "deferential" arbitrary-and-capricious review standard. *See FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

Plaintiff misunderstands the Rule in arguing that processing as many noncitizens as possible at POEs is inconsistent with the Rule's goal "to reduce illegal immigration." FAC ¶ 76.[6] The Rule's appointment exception encourages noncitizens who have already traveled to Mexico to enter the United States through the orderly appointment process as an *alternative* to entering between POEs, with the aim of reducing the burden on immigration enforcement presented by

---

[6] "Processing" may result in expedited removal or outcomes other than parole. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(A)(i) (allowing for expedited removal of those who do not claim fear).

those irregular entries. 88 Fed. Reg. at 31,316; *see also State of Texas v. U.S. DHS*, No. 23-CV-00055, 2023 WL 8285223, at *4, 12 (W.D. Tex. Nov. 29, 2023) (opining that DHS should receive noncitizens at POEs and discourage entry between POEs). This approach was adopted based on the proven success of similar approaches at reducing overall encounters, as well as irregular entries. *Id.* at 31,316–17. Contrary to Plaintiff's suggestion, to accomplish the Rule's objectives, it is not necessary that each individual noncitizen demonstrate that they would have otherwise crossed the border without authorization were it not for the appointment exception. *See* FAC ¶ 84. Such a requirement would needlessly impose the presumption of asylum ineligibility on noncitizens who never had any intent of crossing the border without authorization, and Plaintiff fails to explain how such a requirement could be operationalized.

Plaintiff's claim that the Rule failed to consider "the effects of this rule on Texas," *see* FAC ¶ 77, is refuted by the published Rule. The Rule's preamble includes a significant discussion of what a group of State Attorneys General described as "'the increased costs to the States of higher levels of unlawful aliens precipitated by' the NPRM." 88 Fed. Reg. at 31,437–38. The Departments considered those comments and responded by stating that the "rule is expected to reduce irregular migration, not increase it." *Id.* at 31,438. In support of that conclusion, the Departments cited to evidence that recent country-specific parole processes that had expanded lawful pathways while also instituting consequences for failing to use them—in line with the approach taken by the Rule—led to dramatic decreases in encounters with noncitizens from those countries. *Id.* And the Departments pointed to data they relied on in stating that in the absence of the Rule, the Departments expected even more irregular migration. *See* 88 Fed. Reg. at 31,316; 88 Fed. Reg. at 11,705-06. Although Plaintiff disagrees with the Departments' conclusions, that does not mean that the Departments failed to reasonably consider the issue. And Plaintiff does not identify any

specific "less-burdensome or less-sweeping" alternative to reducing irregular migration that the Departments failed to consider in the Rule's lengthy discussion of alternatives. *See* FAC ¶ 83; 88 Fed. Reg. at 31,367-73.

Finally, Plaintiff is incorrect that the Rule conveys a benefit on undocumented noncitizens. *See* FAC ¶¶ 85–86. As explained, the Rule establishes a presumption of asylum ineligibility for certain noncitizens. *See supra* at 5–6. The Rule sets no policies regarding parole and conveys no specific benefit, immigration status, or relief. *See* 88 Fed. Reg. at 31,331, 31,449–50.

As the Complaint does not allege any facts or reasons that could establish that the appointment exception is arbitrary and capricious, Count 2 should be dismissed.

## IV. Plaintiff's *Ultra Vires* Challenge to the "DHS Scheduling System" in Count 3 is Not Viable Under the APA or Otherwise.

In Count 3, Plaintiffs assert both a common law and an APA *ultra vires* claim challenging "the [u]se and [i]mplementation of" the "DHS scheduling system" referred to in the appointment exception and alleging that DHS is acting in excess of statutory authority by allegedly granting parole to noncitizens who make appointments without conducting a "case-by-case" evaluation. FAC ¶¶ 87, 90, 93. However Plaintiff's claim is stylized, an *ultra vires* challenge provides a narrow avenue of review when an agency is acting without "any colorable basis" in authority. *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011) (quotation marks omitted). The Complaint does not come close to stating a claim under that exacting standard, as the Executive is charged with discretionary authority under 8 U.S.C. § 1182(d)(5)(A) to make parole determinations for arriving noncitizens.

This new *ultra vires* claim is also subject to dismissal on several other independent grounds. As the Fifth Circuit recently reiterated, its precedent does not recognize a common law *ultra vires* claim separate and apart from an *ultra vires* claim under the APA. Plaintiff's challenges to DHS's alleged parole practices—which are not set by the Rule—face additional hurdles: parole

determinations are committed to agency discretion by statute and are thus unreviewable regardless of the claim for relief, and the Complaint identifies no policy statement or document concerning parole of noncitizens that could constitute a reviewable agency action under the APA. Accordingly, this Count should be dismissed for lack of jurisdiction or failure to state a claim.

A.      **DHS Parole Practices Are Not *Ultra Vires*.**

This case involves a challenge to a notice-and-comment Rule that limits eligibility for asylum and, as Plaintiff acknowledges, does not purport to "provide for, prohibit, or otherwise set any policy regarding DHS's discretionary authority to make parole determinations for those who use the CBP One app." FAC ¶ 91 (quoting 88 Fed. Reg. at 31,331). To the extent that Plaintiff now seeks to challenge matters outside the Rule as *ultra vires*, the Complaint plainly fails to identify any way in which the agency charged with determining the particular circumstances in which noncitizens are paroled into the United States acted with no colorable basis in authority.

Even assuming the *ultra vires* exception to sovereign immunity survives the 1976 amendments to the APA, a plaintiff seeking to invoke this exception "must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'" *Danos*, 652 F.3d at 583 (quoting *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). "The complaint must allege facts sufficient to establish that the officer was acting 'without any authority what[so]ever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)). Here, Plaintiff has not satisfied that demanding standard to come within that "extremely limited" doctrine. *State of Texas*, 2023 WL 8285223, at *17.

DHS is expressly authorized by statute to make discretionary decisions about whether to grant parole under 8 U.S.C. § 1182(d)(5)(A). And Congress has charged DHS and CBP with managing POEs in a safe and orderly manner to balance competing priorities including combatting

28

terrorism, managing individual entry, and ensuring orderly and efficient flow of lawful traffic and commerce. *See* 6 U.S.C. §§ 111(b)(1), 202, 211(c), (g)(3); 8 U.S.C. § 1103(a)(1), (3), (5). Plaintiff takes issue with grants of parole for those who have made appointments to pre-schedule their entry at a POE, alleging that parole is granted without "case-by-case" consideration—but they simultaneously acknowledge that DHS does not grant parole in every instance. *See* FAC ¶¶ 87, 90, 92–93, 97. There is no question that Congress has vested DHS with the authority to parole arriving noncitizens, and DHS has more than a colorable basis to make parole determinations. *See* 8 U.S.C. § 1182(d)(5)(A). The Complaint thus does not state a claim under any version of the *ultra vires* doctrine, and Count 3 should be dismissed.

### B.    Plaintiff's Common Law *Ultra Vires* Claim is Subject to Dismissal.

As an independent basis for dismissal, the APA supplants Plaintiff's common law *ultra vires* claim against federal officials. Before 1976, "to avoid the bar of sovereign immunity [for claims against the United States], courts indulged in the fiction that a federal official acting . . . beyond his statutory powers was acting for himself only and not as an agent of government." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). In 1976, Congress rendered this legal fiction unnecessary by enacting Section 702 of the APA, which waived sovereign immunity for claims for nonmonetary relief against the United States, recognizing that "actions challenging official conduct are intrinsically against the United States" and should be "treated as such for all practical purposes." H.R. Rep. No. 1656, 94th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 6121, 6131; Act. of Oct. 21, 1976, Pub. L. No. 94–574, § 1, 90 Stat. 2721, 2721 (codified at 5 U.S.C. § 702). By its express terms, Section 706(2)(C) of the APA offers a vehicle to challenge executive action as unconstitutional or otherwise unlawful. *See* 5 U.S.C. § 706(2)(C) (permitting court to review and set aside agency action found to be "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right"). Because the APA already provides a specific right of judicial review for allegedly *ultra vires* agency actions, a common law claim is barred. The Fifth Circuit recently reaffirmed that, while litigants "can use the APA to assert their *ultra vires* claims," Fifth Circuit precedent casts substantial doubt on the viability of common law *ultra vires* claims because "Congress apparently did away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity when it amended the APA in 1976." *Apter v. HHS*, 80 F.4th 579, 593 (5th Cir. 2023) (cited at FAC ¶ 87).

## C.   The Court Lacks Jurisdiction to Review Plaintiff's *Ultra Vires* Claim.

As discussed above, the INA precludes jurisdiction over Plaintiff's challenge to DHS's discretionary decisions to grant parole to individual noncitizens who arrived at the POE with an appointment. "[N]otwithstanding any other provision of law (statutory or nonstatutory)," Congress has precluded judicial review of "any decision or action . . . the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). As the INA specifies that the decision whether to grant parole rests "in [the] discretion" of the Secretary, 8 U.S.C. § 1182(d)(5)(A), Plaintiff's claim challenging DHS's grants of parole to noncitizens must be dismissed for lack of jurisdiction. *Maldonado v. Macias*, 150 F. Supp. 3d 788, 795 (W.D. Tex. 2015); *see also Samirah v. O'Connell,* 335 F.3d 545, 549 (7th Cir. 2003). These otherwise unreviewable grants of parole do not become reviewable even assuming (as Plaintiff alleges) that DHS is implementing policies or practices regarding the granting of parole in this scenario. *See Flores v. Garland,* 72 F.4th 85, 91–92 (5th Cir. 2023) (holding that reviewability under § 1252(a)(2)(B)(ii) is based solely on whether the statutory text renders the decision discretionary); *Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 & n.12 (5th Cir. 2000) (where a "discretionary judgment" is barred from review, challenges to "the *manner* in which that discretionary judgment is exercised" and to "whether the procedural apparatus supplied satisfies

regulatory, statutory, and constitutional constraints" are also barred); *cf. Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (section 1252(a)(2)(B)(i), which bars jurisdiction to review "any judgment regarding the granting of relief" under certain INA provisions bars review of "judgments of whatever kind" covered by the statute, "not just discretionary judgments or the last-in-time judgment," and so "encompasses not just the granting of relief but also any judgment relating to the granting of relief").

### D.    Plaintiff's APA *Ultra Vires* Claim is Subject to Dismissal.

Plaintiff's *ultra vires* claim under the APA also has several threshold flaws that provide independent grounds to dismiss.  DHS's determinations as to when to exercise its parole authority and as to how best to process arriving migrants are precisely the types of immigration enforcement and administration decisions that are committed to agency discretion by law and are thus not subject to APA review. *See* 5 U.S.C. § 701(a)(2). The use of the CBP One app to streamline and facilitate expedient processing implicates the "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler*, 470 U.S. at 831. Appointments scheduled through CBP One assist CBP in balancing its multiple missions by enabling it to "manage the flows [of migrants] in a safe and efficient manner." 88 Fed. Reg. at 31,318. Such mission-balancing and resource-management is a core matter for executive discretion, *see Heckler*, 470 U.S. at 831, as is the question of how to "adequately guard[] the borders of the United States," *see Chiles*, 69 F.3d at 1096. Maintaining executive discretion is especially important in this arena because immigration enforcement and border management implicates the "dynamic nature of relations with other countries," *Arizona*, 567 U.S. at 397, including Mexico and other regional partners with whom the United States is working to address irregular migration. Accordingly, Plaintiff cannot assert an APA claim challenging the use of CBP One, because DHS and CBP's use of tools to efficiently manage immigration processing at POEs is committed to their discretion.

Moreover, and in any event, plaintiff's *ultra vires* claim is premised upon the allegation, on "information and belief," that Defendants presume that any noncitizen using the CBP One app satisfies the criteria necessary to be paroled into the United States, FAC ¶ 98, and thus such noncitizens are paroled "en masse" into the United States in violation of § 1182(d)(5), *id.* ¶ 94.[7] But Plaintiff does not identify a particular agency action or statement that the Court may review under the APA. *See Biden v. Texas (Texas MPP)*, 597 U.S. 785, 809 (2022). The Rule itself has nothing to do with parole. *See supra* at 28. Plaintiff simply challenges, untethered from the Rule, the rate at which DHS has granted parole to noncitizens who used the CBP One app, even while admitting that DHS does not grant parole in all instances.

Under the APA, a plaintiff may not challenge "an abstract decision apart from specific agency action." *Texas MPP*, 597 U.S. at 809. Here, Plaintiff fails to identify any "agency statement of general or particular applicability . . . designed to implement, interpret, or prescribe law or policy" on parole. 5 U.S.C. § 551(4). Certainly, the Rule is not that statement of policy, as as it does not "provide for, prohibit, or otherwise set any policy regarding DHS's discretionary authority to make parole determinations for those who use the CBP One app." 88 Fed. Reg. at 31,331. Individuals subject to the Rule may be considered for parole not because of anything in the Rule, but by virtue of § 1182(d)(5). Plaintiff simply complains that more individuals excepted from the Rule have been paroled under § 1182(d)(5) than Plaintiff would like. But "[c]ourts should

---

[7] Plaintiff also alleges that such individuals are presumed to "satisfy the criteria necessary to be granted asylum" or other protection, FAC ¶ 101, but the Complaint acknowledges that CBP officers do not determine whether noncitizens are eligible for asylum. FAC ¶ 32 (citing 88 Fed. Reg. at 31,358). Instead, CBP officers inspect and process inadmissible noncitizens for an appropriate immigration disposition, such as expedited or section 1229a removal proceedings, where the noncitizen's claim of asylum will be evaluated. *Supra* at 3–4. As the Complaint also acknowledges, noncitizens who were paroled at POEs were issued notices to appear in § 1229a removal proceedings, where they can raise asylum as a defense to removal. *See* FAC ¶¶ 58 (1st); *supra* at 29.

not, and indeed cannot, review broad, generalized agency policies in the abstract. Nor can they separate an agency's decision from the statement intended to implement that decision." *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1171 (D. Ariz. 2022) (rejecting challenge to "mass parole and non-detention" policies in general, rather than a specific agency decision or document); *see also Florida v. U.S.*, 660 F. Supp. 3d 1239, 1270 (N.D. Fla. 2023) (similar).

Similarly, Plaintiff cannot amalgamate thousands of individual parole decisions into a policy for purposes of APA review. Rather, the APA requires Plaintiff to "direct its attack against some *particular* 'agency action.'" *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) (emphasis added); *see Whitewater Draw Natural Resource Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1012 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 713 (2021) (holding Plaintiffs cannot obtain APA review of a collection of individual actions pertaining to a single subject simply by labeling those individual actions a policy); *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 791 (D. Ariz. 2022), *appeal dismissed*, No. 22-15519, 2022 WL 6105386 (9th Cir. Sept. 12, 2022) (holding that State's challenge to a "collection of actions" as a "*de facto* program" that has encouraged migration and population growth is not actionable under the APA). The sort of broad, programmatic attack that Plaintiff seeks to bring against continuing, and ever-changing, operational processing decisions by CBP at various POEs is not actionable under the APA and instead should be addressed in "the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 890; *Alabama-Coushatta*, 757 F.3d at 489–90. For these reasons, Plaintiff's *ultra vires* claim, even as pleaded under the APA, should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint for lack of jurisdiction or, alternatively, for failure to state a claim.

Dated: March 15, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         *Principal Deputy Assistant Attorney General*

                                         WILLIAM C. PEACHEY
                                         *Director*

                                         EREZ REUVENI
                                         *Counsel*

                                         CHRISTINA P. GREER
                                         BRIAN C. WARD
                                         *Senior Litigation Counsel*

                                         By: */s/ Katherine J. Shinners*
                                         KATHERINE J. SHINNERS
                                         *Senior Litigation Counsel*
                                         D.C. Bar No. 978141
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation – DCS
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 598-8259
                                         Fax: (202) 305-7000
                                         Email: katherine.j.shinners@usdoj.gov

                                         ELISSA P. FUDIM
                                         *Trial Attorney*

                                         *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff.

/s/*Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel