UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Case No. 2:23-CV-00024-AM |
| ALEJANDRO MAYORKAS, | § | |
| Secretary of Homeland Security, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Dated:        May 30, 2024                Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*

EREZ REUVENI
*Counsel*

CHRISTINA P. GREER
BRIAN C. WARD
*Senior Litigation Counsel*

By: /s/ *Katherine J. Shinners*_____
KATHERINE J. SHINNERS (*pro hac vice*)
*Senior Litigation Counsel*
DC Bar No. 978141
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Fax: (202) 305-7000
Email: katherine.j.shinners@usdoj.gov

ELISSA P. FUDIM
*Trial Attorney*

*Attorneys for Defendants*

**INTRODUCTION**

The Court should grant Defendants' Motion (ECF 34) and dismiss the First Amended Complaint. Plaintiff's response to the Motion relies throughout on two basic misconceptions about the effect and scope of the Circumvention of Lawful Pathways Rule (the Rule). *See* Opposition (ECF 41). First, contrary to Plaintiff's arguments, the Rule does not alter the statute's placement of the burden of proof on the asylum applicant. *See* 8 U.S.C. § 1158(b)(1)(B). Asylum is a discretionary form of relief from removal for noncitizens in the United States who demonstrate, *inter alia*, past persecution or a well-founded fear of persecution in their home country on account of a protected ground. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b). The Rule, promulgated jointly by the Departments of Homeland Security and Justice ("the Departments"), does not lighten the applicant's burden to prove eligibility for asylum. Instead, it establishes a rebuttable presumption of asylum *ineligibility* for certain noncitizens who cross the U.S.-Mexico border during a two-year period. *See generally* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314 (May 16, 2023); 8 C.F.R. §§ 208.33, 1208.13(f), 1208.33. If the presumption applies and is not rebutted, the noncitizen cannot obtain asylum, although the noncitizen must still be considered for statutory withholding of removal or protection under the Convention Against Torture. At the same time, to encourage use of orderly pathways and discourage unlawful entry, the Rule provides that this presumption of asylum ineligibility does not apply to those noncitizens who enter at a Port of Entry (POE) pursuant to a pre-scheduled appointment (the "appointment exception"). *See* 8 C.F.R. §§ 208.33(a)(2)(ii)(B), 1208.33(a)(2)(ii)(B). Contrary to Plaintiff's arguments, the Rule does not entitle those noncitizens to a presumption of asylum *eligibility*. Instead, to obtain asylum, such noncitizens still bear the burden of proof to demonstrate past persecution or a well-founded fear of persecution, that they are not subject to other eligibility bars, and that they merit a favorable exercise of discretion, just as all asylum applicants have had to do since the passage of the asylum statute.

Second, contrary to Plaintiff's arguments, the Rule has no bearing on the Executive's exercise of parole authority and does not create a mass parole program. The Rule does not address

or set any policy regarding parole determinations for any inadmissible noncitizens, whether or not they schedule appointments. And the Department of Homeland Security's (DHS) parole determinations are not reviewable or in excess of its statutory authority.

Because Plaintiff's standing and merits arguments depend on its misconceptions of how the Rule operates, those arguments fail as a matter of law, and the Complaint should be dismissed.

## ARGUMENT

## I.      Plaintiff Lacks Article III Standing.

### A.      The Complaint Does Not State a Cognizable Injury.

Plaintiff's allegations of indirect impacts on its public fisc or economy allegedly arising from the Rule's appointment exception or the Executive's exercise of discretionary parole authority at POEs do not clear the threshold hurdle to plead a cognizable, non-speculative injury. *See* Opp. 4–7.

First, Plaintiff's arguments for standing cannot survive the reasoning of *United States v. Texas (Enforcement Priorities)*, 599 U.S. 670 (2023). *See* Mot. 10–12. *Enforcement Priorities* determined that States have no cognizable injury arising from Executive Branch guidelines concerning its exercise of "enforcement discretion over arrests and prosecutions" for immigration violations. *Texas (Enforcement Priorities)*, 599 U.S. at 679.

Plaintiff's challenge to the Rule and to the Executive's exercise of its statutory parole authority is not meaningfully distinct from the States' challenge to the immigration enforcement discretion guidelines in *Enforcement Priorities* for purposes of the standing analysis. That is because Plaintiff claims injury allegedly arising from whether or how the Executive is exercising its immigration enforcement discretion against others. In *Enforcement Priorities*, Texas and Louisiana alleged that an Executive policy regarding the arrest and removal of immigration violators caused them increased social-service and law-enforcement costs because under the policies the government failed to arrest more noncitizens. *Texas (Enforcement Priorities)*, 599 U.S. at 674.  Here, Plaintiff similarly claims it will incur social-service and law-enforcement costs due

to the release of noncitizens who are processed at POEs. Opp. 8–9. Thus, although Plaintiff argues that it is not attempting to "compel the arrest or prosecution of anyone," Opp. 7, Plaintiff's core complaint is that the Executive is not arresting, detaining, or removing enough of the noncitizens it encounters at POEs. That is essentially the complaint that was presented in *Enforcement Priorities*. And the reasons the Supreme Court articulated in *Enforcement Priorities* to conclude the States lacked standing to challenge immigration enforcement guidelines apply fully here— including that the decisions at issue involve no exercise of coercive power over the Plaintiff; that challenges to those decisions implicate Article II and foreign-policy concerns like those implicated in the Rule; and that courts lack "meaningful standards" to assess such decisions that reflect the Executive's "complicated balancing" of factors like "resource constraints" and "public-safety and public-welfare needs." *See* Mot. 11 (citing *Texas (Enforcement Priorities)*, 599 U.S. at 678–81, and *Heckler v. Chaney*, 470 U.S. 821, 830–32 (1985)).

Regardless, however, Plaintiff's claimed injury from incidental effects of federal policy on its expenditures is not cognizable even outside the immigration enforcement context. Mot. 11–12. The Supreme Court in *Enforcement Priorities* cautioned generally against recognizing such "attenuated" theories of injury due to the "bedrock Article III constraints in cases brought by States against an executive agency." *Texas (Enforcement Priorities)*, 599 U.S. at 680 n.3. Plaintiff's claimed "monetary costs" (Opp. 7) thus provide no basis to distinguish this case from *Enforcement Priorities*; the very same costs were rejected by the Supreme Court as non-cognizable injuries. *See Texas (Enforcement Priorities)*, 599 U.S. at 674, 676–78, 680 n.3; *see also E. Bay Sanctuary Covenant v. Biden*, No. 23-16032, 2024 WL 2309476, at *3–4 (9th Cir. May 22, 2024) (holding that States did not have "significant protectible interest" in "reducing immigration" or "minimizing expenditures" to support intervention). Nor does it matter that Plaintiff argues its "claims seek to prevent the Final Rule from categorically granting parole and affirmative immigration relief," Opp. 7, because its claims are still based on indirect, attenuated injury. But this assertion is in any event incorrect, because nothing in the Rule grants parole or provides affirmative immigration relief, categorically or otherwise. *See infra* § III(A).

3

<u>Second</u>, Plaintiff's claimed injury is also too speculative to permit this lawsuit to go forward. *See* Mot. 12–14. Even at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And, as courts within the Fifth Circuit have emphasized based on an analysis of pre-*Enforcement Priorities* Fifth Circuit precedent, it is not enough to assert that a particular immigration policy results in noncitizens being released into the State, which allegedly leads to State expenditures. Instead, States must plausibly allege that the immigration policy would lead to an increased number of noncitizens relative to the status quo—that is, the number of noncitizens who would be present in the State if the challenged policy did not exist—and that attendant costs would increase. *Texas v. United States Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068, at *15–17 (S.D. Tex. Mar. 8, 2024) (*Texas (CHNV)*) (stating that harm "has long been understood in the immigration context" as meaning harm "relative to the status quo, and relative to Plaintiff's position absent the challenged policy"), *appeal filed*, No. 24-40160 (5th Cir. Mar. 12, 2024). In other words, "the baseline for these analyses is not zero immigration." *Arizona v. Garland*, No. 6:22-cv-01130, 2024 WL 1645417, at *11 (W.D. La. Apr. 16, 2024) (characterizing *Texas (CHNV)*).

Plaintiff has not made any allegations that would show injury under this standard. It has argued only that noncitizens who schedule appointments through CBP One™ and are thus subject to the appointment exception are also being granted parole at POEs, which results in high numbers of noncitizens being released in Texas. *See* Opp. 8–10; *see also* ECF 30, First Am. Compl. (FAC) ¶¶ 58–59 (1st). At most, therefore, it argues that the number of noncitizens released at POEs will be reduced if the appointment exception no longer existed. Opp. 10; *see also id.* at 12. Even if this allegation were plausible (and it is not, because the Rule's appointment exception does not dictate parole policies or outcomes, *see* Mot. 14–15; *infra* § I(B)(1)), it is not enough to state an injury because it does not account for the overall immigration context. Plaintiff has made no factual allegations that, if proven, would establish that the Rule as a whole leads "to increased immigration—and thereby, increased costs—for Texas" over what would be the case if the Rule's

appointment exception did not exist. *See* Opp. 9.[1]  To the contrary, if the appointment exception were vacated, that would remove much of the incentive for noncitizens with potentially meritorious asylum claims to seek out orderly entry at POEs, because they would be subject to the rebuttable presumption of asylum ineligibility either way. And that in turn could very well lead to more irregular entries between POEs, an overwhelmed immigration system, and "more noncitizens being released into the interior pending immigration proceedings," Mot. 13 (citing 88 Fed. Reg. at 31,328). Indeed, Plaintiff has asserted elsewhere that irregular entries between POEs lead to the same social-service expenditures as does the parole of noncitizens. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023). It is incumbent on Plaintiff to plausibly allege that the appointment exception leads to overall increased immigration, over what would be the case without the exception, and it has failed to do so.  Accordingly, its Complaint must be dismissed.

> **B.      Plaintiff's Claimed Injury is Not Redressable.**

Even if Plaintiff's alleged injury were cognizable, its claimed harms cannot be redressed by an order from this Court. Its Complaint seeks two forms relief: (1) relief against the Rule, namely, injunction, vacatur, and declaration of the unlawfulness of the Rule's appointment exception; and (2) relief against parole, namely an injunction that would prohibit Defendants from granting parole for *any* noncitizen who has scheduled an appointment to enter the United States at a POE, or declaring such acts unlawful. *See* FAC § VI. This requested relief either would not remedy the claimed harms or is legally unavailable. Accordingly, the Complaint does not adequately allege redressability.

> 1.   Standing to Challenge the Rule (Counts 1 and 2).

As to the first type of relief Plaintiff seeks, relief that is directed against the Rule cannot redress Plaintiff's claimed injury. Parole decisions for noncitizens who schedule appointments are

---

[1] Further, the relevant status quo for these purposes would not be the levels of migration when the Title 42 public health orders were in effect from March 2020 to May 2023, as those orders meant that noncitizens without documents sufficient for admission were generally precluded entry or expelled without processing under the immigration statutes. *See* Mot. 2. Those orders have expired, and no relief that Plaintiff seeks in this suit would resurrect them.

not governed or dictated by the Rule. Thus, removing or declaring unlawful the Rule's appointment exception has no impact on parole determinations, which are the source of Plaintiff's claimed injury. Mot. 14–15. Plaintiff's argument to the contrary again improperly conflates parole determinations with the Rule's appointment exception to the presumption of asylum ineligibility. *See* Opp. 12–13.

Indeed, even if the presumption of asylum ineligibility applies to a particular noncitizen, that does not, as a legal matter, prevent an immigration officer from granting parole to that noncitizen. That noncitizen could be processed for placement in § 1229a removal proceedings before the Executive Office for Immigration Review (EOIR) and granted parole by U.S. Customs and Border Protection (CBP). *See* Mot. 4, 5. The presumption of asylum ineligibility, if unrebutted, would still apply in removal proceedings to render the noncitizen ineligible for discretionary asylum relief. *See* 8 C.F.R. §§ 1208.3(a)(1), 1208.13(f). Nor is a noncitizen to whom the presumption is not applied presumed to be *eligible* for asylum, as Plaintiff claims (at Opp. 11). *See infra* § III(A). A noncitizen who is not subject to the Rule's rebuttable presumption of asylum ineligibility must still meet his burden of proof to establish asylum eligibility. *See id.* Thus, Plaintiff's argument that eliminating one of the Rule's exceptions to the presumption of asylum ineligibility for certain noncitizens will also eliminate a (non-existent) presumption of asylum eligibility or necessarily prevent grants of parole to such noncitizens is incorrect as a matter of law. *See* Opp. 12, 13.[2]

Further, the Court lacks authority to enter an injunction or vacatur of the appointment exception due to 8 U.S.C. § 1252(f)(1)'s bar on injunctive relief, the Immigration and Nationality Act's (INA) limits on jurisdiction to review the expedited removal system and issue relief related

---

[2] Plaintiff argues it is entitled to special solicitude in establishing traceability. Opp. 11. But it still must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In any event, the Supreme Court in *Enforcement Priorities* rejected States' reliance on special solicitude where they challenged an exercise of immigration enforcement discretion, not the denial of a statutorily authorized petition for rulemaking as in *Massachusetts v. EPA*, 549 U.S. 497 (2007). *Texas (Enforcement Priorities)*, 599 U.S. at 685 n.6.

thereto, and the Administrative Procedure Act's (APA) limits on available relief.

Section 1252(f)(1) bars courts from "enjoin[ing] or restrain[ing] the operation of" sections 1221–1231 of Title 8. That provision precludes vacatur or injunctive relief against the Rule's appointment exception because such an injunction would interfere with the government's operation of covered statutes by imposing requirements on the adjudication of asylum claims in expedited removal under § 1225(b)(1) and removal proceedings under § 1229a. *See* Mot. 16 (citing *Garland v. Aleman Gonzalez*, 596 U.S. 543, 548–50 (2022)). Vacating the appointment exception or enjoining its application would prevent asylum officers and immigration judges from making a credible fear determination under § 1225(b)(1) in the manner prescribed by the Rule. It would also mandate how immigration judges determine whether a noncitizen has met their burden to demonstrate eligibility for relief from removal under § 1229a(c)(4)(A) by necessarily requiring the application of the presumption to those to whom the Rule did not intend it to apply. If unrebutted, the presumption prevents the noncitizen from establishing eligibility for asylum. *See* Mot. 15–16.

Plaintiff argues that an injunction or vacatur of the appointment exception is not precluded by § 1252(f)(1) because the relief does not compel a particular enforcement action or compel removal. Opp. 16. But the Supreme Court has rejected this simplistic view of § 1252(f)(1)'s constraints. Section 1252(f)(1) does not refer only to the statutes themselves, but also to "the way [they are] being carried out." *Aleman Gonzalez*, 596 U.S. at 550; *see also Hamama v. Adducci*, 912 F.3d 869, 879–80 (6th Cir. 2018) (holding § 1252(f)(1) barred injunction that imposed limitations on what the government can and cannot do in implementing covered removal and detention provisions). Thus, although the Rule establishes a condition on asylum eligibility under 8 U.S.C. § 1158, it *operates* in expedited and § 1229a removal proceedings and is the way that sections 1225(b)(1) and 1229a are being carried out with respect to the adjudication of asylum claims.

Further, contrary to Plaintiff's argument (at Opp. 14–15), § 1252(f)(1) precludes vacatur where, as here, the vacatur order would "enjoin or restrain the operation of" the covered provisions beyond an individual noncitizen. Like an injunction, vacatur "restrict[s] or stop[s] official action,"

*Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency action under review. Here, the requested vacatur is practically equivalent to Plaintiff's requested injunction, because it would prevent the Departments from implementing the Rule's appointment exception. Vacatur therefore possesses the hallmark of the relief barred by § 1252(f)(1).

Consistent with that functional approach, the Supreme Court has repeatedly given a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring jurisdiction over appeals from "injunction[s]" in certain civil actions to apply to orders with a "coercive" effect. *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 307 (1975). The Court commented that it had "repeatedly exercised jurisdiction under [the provision] over appeals from orders" that were "not cast in injunctive language but which by their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11 (quotation omitted). Here, too, vacatur of the Rule's appointment exception would operate like an injunction requiring expanded application of the Rule's presumption beyond what the Departments intended. The Fifth Circuit authority determining that § 1252(f)(1) does not preclude vacatur (cited at Opp. 14–15) runs contrary to— or is at least in significant tension with—the Supreme Court's broader interpretation of an "injunction" as encompassing orders (like vacatur) that have coercive effect. And the text of § 1252(f)(1) is not limited to "injunctions" but applies to orders that "enjoin or restrain the operation of" the covered provisions—and the terms "enjoin" and "restrain" easily encompass a judicial vacatur that interferes with the government's operation of the provisions. *See Aleman Gonzalez*, 596 U.S. at 550.[3]

This Court similarly lacks authority to issue relief affecting the expedited removal

---

[3] In describing § 1252(f)(1) as "nothing more or less than a limit on injunctive relief" in *Reno v. AADC*, the Supreme Court was merely holding that the statute did not provide "an affirmative grant of jurisdiction" to consider a selective-enforcement claim. 525 U.S. 471, 481–82 (1999). It did not consider the question presented here—whether vacatur falls within the statute's limits on relief.

system—such as any injunctive relief, vacatur, or declaratory relief—that   precludes the application of the Rule's appointment exception in expedited removal procedures. *See* Mot. 16–17; *see also* 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(1), (3); *Grace v. Barr*, 965 F.3d 883, 891 (D.C. Cir. 2020). Plaintiff does not respond to this point, apparently conceding it.

Finally, the APA, 5 U.S.C. § 706(2), does not permit universal vacatur of a regulation or portions thereof.  Mot. 17. Although Fifth Circuit decisions identify vacatur as an available remedy under the APA, *see* Opp. 17 (citing, *inter alia*, *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022)), Defendants make this argument to preserve it. *See* Mot. 17.

For these reasons, Plaintiff lacks standing to challenge the Rule's appointment exception because relief related to the Rule is not likely to redress Plaintiff's claimed injury or is unavailable, and Counts 1 and 2 should be dismissed on this basis. Mot. 17–18.

2.   Standing to Challenge Parole Determinations (Count 3).

The second type of relief Plaintiff seeks—an injunction or related relief prohibiting Defendants from granting parole to *any* noncitizen who uses a DHS scheduling system to pre-schedule their presentment at a POE, FAC § VI(c)—is likewise legally unavailable. As discussed below, *infra* § IV(A), the INA deprives courts of jurisdiction to review discretionary decisions or actions like grants of parole. This prohibition on review necessarily precludes relief—like the relief Plaintiff seeks—that would direct the Executive's exercise of discretion by either compelling or prohibiting the discretionary grant of parole or declaring certain grants of parole unlawful. *See* Mot. 18 (citing *Giammarco v. Kerlikowske*, 665 F. App'x 24, 25–26 (2d Cir. 2016) and *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003)). Because the INA deprives the Court of jurisdiction to enjoin or declare unlawful grants of parole for noncitizens who pre-schedule their arrival at a POE or direct the exercise of parole, the relief Plaintiff seeks as to Count 3 is unavailable and cannot redress its claimed injury.

## II.   Texas is Not Within the Zone of Interests of the Relevant Immigration Statutes.

Even if Plaintiff could establish Article III standing, Texas is not within the zone of

interests protected by the relevant immigration statutes. Plaintiff is not itself the subject of the challenged regulatory actions. Accordingly, it has no right of review because its "interests are so marginally related to . . . the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). Nothing in the asylum or parole statutes, or the INA in general, evinces any concern with a policy goal of reducing migration or with States' concerns with impacts of immigration. Mot. 19-20 (citing, *inter alia*, 8 U.S.C. § 1158(d)(7); *Fed'n for Am. Immigr. Reform, Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996)).

Plaintiff argues that Defendants focus too narrowly on the particular asylum and parole provisions at issue. Opp. 23. But these are the relevant statutory provisions, because Plaintiff challenges the Departments' creation of conditions on asylum eligibility under the asylum statute as well as DHS's use of its parole authority.  Plaintiff's "grievance must arguably fall within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit," *Bennett v. Spear*, 520 U.S. 154, 162 (1997), although the structure of the INA is relevant to place the relevant asylum and parole statutes in context for purposes of the zone-of-interests inquiry, *see Clarke*, 479 U.S. at 401. Moreover, Plaintiff points to no provision of the INA that suggests that the immigration statute is concerned with States' fiscal or other interests, or with the fiscal impact of immigration generally. To the contrary, the INA throughout reflects the principle that its provisions are addressed only to—and may be challenged, if at all, only by—individual noncitizens who are regulated by the INA. Mot. 20. Congress clearly did not intend for "judicial review of those issues at the behest of other persons." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). The INA similarly contains several provisions specifically aimed at protecting the Executive's discretion in the immigration context from the courts. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(B); *AADC*, 525 U.S. at 486-87. And to the extent the Fifth Circuit has previously held that States are within the zone of interests of other immigration provisions, *see* Opp. 23 (citing *Texas v. Biden*, 20 F. 4th 928, 975 (2021) (addressing § 1225(b)(2)), *rev'd*, *Biden v. Texas*, 597 U.S. 785 (2022), and *Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015) (addressing

prosecutorial discretion)), the Supreme Court has since made clear in *Enforcement Priorities*—relying on principles that inform not only the scope of Article III but also the scope of the APA's cause of action—that third parties like Plaintiff have no cognizable interest in the way the Executive enforces the immigration laws against others. The INA thus precludes Plaintiff's suit. 5 U.S.C. § 701(a)(1).

## III.    Counts 1 and 2 Do Not State Valid APA Challenges to the Rule.

### A.    The Rule's Appointment Exception is Within the Departments' Statutory Authority.

Dismissal of Count 1 is proper as a matter of law because the Rule's provisions—including its appointment exception—are well within the Departments' statutory authority with respect to asylum and removal. Mot. 21–25. Indeed, Plaintiff accepts the premise that the Departments may, through regulation, place conditions on asylum eligibility like the Rule's rebuttable presumption of asylum ineligibility. Opp. 25. It nonetheless argues that the Departments somehow lack authority to define the contours of those conditions by making *exceptions* to the presumption of asylum ineligibility. *See* Opp. 25–26, 32–33. But this cannot be. Congress's grant of authority to create conditions or limitations on asylum eligibility necessarily encompasses the ability to define the boundaries of those conditions or limitations, such as by creating exceptions to those conditions or limitations. *See* Mot. 22 (citing examples of asylum regulations creating eligibility conditions with exceptions).

Nor is the appointment exception "inconsistent with" the asylum statute or the INA generally. Contrary to Plaintiff's arguments, the appointment exception does not alter the asylum statute's allocation of the burden of proof. *See* Opp. 25–26. That burden remains on the asylum applicant, even if the applicant is excepted from the Rule's rebuttable presumption. Asylum is a discretionary form of relief from removal for noncitizens in the United States who experienced persecution or have a well-founded fear of persecution in their home country on account of a protected ground. 8 U.S.C. § 1158(b); *see also* 8 U.S.C. § 1101(a)(42)(A) (definition of "refugee"). The burden of proof is on asylum applicants to demonstrate that they meet this

11

standard. 8 U.S.C. § 1158(b)(1)(B). The Rule added a rebuttable presumption of asylum ineligibility that applies to certain noncitizens who enter the United States via the southwest land border or adjacent coastal borders. If the presumption applies and is not rebutted, the noncitizen cannot obtain asylum. Although the Rule excepts from this presumption those noncitizens who enter at a POE pursuant to a pre-scheduled appointment, 8 C.F.R. § 208.33(a)(2)(ii)(B), to obtain asylum, those noncitizens must still separately demonstrate that they have been persecuted or have a well-founded fear of persecution on account of a protected ground, that they are not subject to any asylum eligibility bars, and that they merit a favorable exercise of discretion. *See, e.g.*, 8 U.S.C. § 1158(b); 8 C.F.R. §§ 208.33, 1208.13. The Rule thus does not entitle those noncitizens to a presumption of asylum *eligibility* and does not "lessen[] the burden of proof on the applicant." *See* Opp. 25.

The Rule's appointment exception is also fully consistent with other provisions of the INA, including § 1103(a)(5). That provision is a *grant* of authority to the Secretary; it does not limit his authority to delineate the contours of a condition on asylum eligibility and indeed places no "substantive limits on the Executive." Mot. 22–23 (quoting *State of Tex. v. United States*, 106 F.3d 661, 667 (5th Cir. 1997)). But even if it did place any such limits, the Rule's appointment exception on its face does not "invite" or "incentivize" illegal entry. Mot. 23–24. Plaintiff's argument to the contrary (at Opp. 26) relies on a conflation of improper entry between POEs with entry at a POE and should thus be rejected. Nor does § 1103(g)(2), by allowing the Attorney General to establish regulations he "determines to be necessary" to carry out his immigration authorities and functions and those of EOIR (a component of the Department of Justice (DOJ)), place any relevant limit on DOJ's authority under 8 U.S.C. §§ 1158(b)(2)(C) and (d)(5)(B) to promulgate regulations concerning the application of conditions on asylum eligibility in immigration proceedings conducted before EOIR. *See* Opp. 26–27; *Lenis v. U.S. Atty. Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008) (describing the statute as granting "general authority over immigration and nationalization matters to the Attorney General"). In promulgating the Rule, the Attorney General determined it to be necessary. The Complaint does not state a claim that the Rule's appointment exception

exceeds the Departments' statutory authority, and Count 1 should be dismissed.

### B.  The Rule is Reasonable and Considers Relevant Factors.

Count 2 also does not state a claim. The Rule—including its appointment exception—is "reasonable and reasonably explained" and easily withstands the "deferential" arbitrary-and-capricious review standard. *See FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); Mot. 25–27. Plaintiff's arguments to the contrary rely on a misconstruction of the Rule and its rationales.

Plaintiff argues that the Rule is arbitrary and capricious because, it claims, the Rule's intent is not to reduce overall migration but only irregular entries between POEs, and because the Departments did not consider Texas's concerns that the Rule would lead to higher numbers of noncitizens entering the United States through POEs. Opp. 28–29. Although the Rule's express aim is to reduce irregular migration, a reduction in irregular migration certainly would address Texas's concerns. Indeed, the Rule's approach of coupling incentives to use orderly pathways with new consequences for a failure to use those pathways was modeled after the separate parole-process approaches, which were successful at reducing overall migration from affected populations and not just irregular entries. 88 Fed. Reg. at 31,316–17 (noting that DHS estimated that the drop in encounters between POEs with noncitizens of nationalities covered by the parole processes was four times greater than the number of noncitizens permitted entry to the United States under the parole processes).  Further, a reduction in irregular migration alone would reduce burdens Plaintiff claims to face. The Departments reasoned that a reduction in irregular entries would reduce the strain on border states and non-governmental organizations, allowing them to "better absorb releases from CBP border facilities and provide support to the migrant community." *Id.* at 31,325. Based on this approach, the appointment exception is not "arbitrary," as Plaintiff claims. *See* Opp. 27. It seeks to discourage migrants who have traveled to Mexico from entering irregularly between POEs. *See e.g.*, 88 Fed. Reg. at 31,427 ("The purpose of this rule is to discourage irregular migration by encouraging migrants, including those who may seek asylum,

to use lawful, safe, and orderly pathways to the United States.").

For similar reasons, the Rule's preamble refutes Plaintiff's assertion that the Departments "wholly failed to engage with" Plaintiff's concerns about "the effects of this rule on Texas." Opp. 29; FAC ¶ 77; Mot. 26–27 (citing 88 Fed. Reg. at 31,316, 31,437–38). Although Plaintiff asserts that Texas was concerned with "higher levels of unlawful aliens" and not just crossings between POEs (Opp. 28), the Departments' response that the Rule seeks to reduce irregular migration and promote more orderly processing at POEs reflects its consideration of the impacts of the Rule on states like Plaintiff of surges in border crossings by noncitizens without documents sufficient for admission. *See, e.g.*, 88 Fed. Reg. at 31,328; 88 Fed. Reg. at 11,729. Again, although Plaintiff disagrees with the Departments' conclusions, that does not mean that the Departments failed to reasonably consider the issue. As the Complaint does not allege any reasons that could establish that the appointment exception is arbitrary and capricious, Count 2 should be dismissed.

## IV.  Plaintiff's *Ultra Vires* Challenge in Count 3 Is Not Viable.

### A.  The Court Lacks Jurisdiction Over Count 3.

The INA precludes jurisdiction over Plaintiff's claim in Count 3. Congress has insulated from judicial review DHS's decisions to grant parole to individual noncitizens who enter at POEs with an appointment, because the decision whether or not to grant parole rests "in [the] discretion" of the Secretary. Mot. 30–31; 8 U.S.C. § 1182(d)(5)(A); 8 U.S.C. § 1252(a)(2)(B)(ii); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 795 (W.D. Tex. 2015); *see also Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003).

Plaintiff argues that § 1252(a)(2)(B)(ii)'s bar to judicial review does not apply here because it is challenging an alleged parole "program," and § 1252(a)(2)(B)(ii) applies only to singular decisions. Opp. 20–21. Yet § 1252(a)(2)(B)(ii) applies equally to challenges to policies and practices governing the manner of making discretionary actions or decisions, as well as to each underlying decision or action. *See* Mot. 30–31. Indeed, in other contexts, courts have found that § 1252(a)(2)(B)(ii) barred policy-and-practice challenges. *See e.g.*, *Cheejati v. Blinken*, 97 F.4th 988, 993 (5th Cir. 2024) (holding that § 1252(a)(2)(B)(ii) barred challenge to practice concerning

adjustment of status codified in a regulation, because the practice concerned matters within the agency's discretion); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) (holding that § 1252(a)(2)(B)(ii) barred challenge to standards used to reach discretionary decision, because those standards were not collateral to the discretionary decision). Thus, if an individual noncitizen attempted to challenge a parole-related policy or process related to the underlying denial of parole, the noncitizen's challenge would be unreviewable under § 1252(a)(2)(B)(ii). There is no basis in the statutory text to exempt Plaintiff's claim from this judicial-review bar simply because it is challenging many grants of parole rather than one, or simply because it is a State rather than a noncitizen subject to the parole determination.

Plaintiff relies only on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (Opp. 21), but the *Thunder Basin* factors do not apply here because § 1252(a)(2)(B)(ii) is an express jurisdiction-stripping provision. *See Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 922–23 (5th Cir. 2019); *Bohon v. FERC*, 92 F.4th 1121, 1123 (D.C. Cir. 2024). In any event, Plaintiff's argument fails even under *Thunder Basin*.  Plaintiff's claim that DHS lacks statutory authority to grant parole in the manner alleged is not "collateral to" unreviewable individual parole decisions—it is inextricably intertwined with each individual parole determination. And determining the circumstances under which parole is warranted as a matter of discretion is certainly within DHS's expertise. *See Thunder Basin*, 510 U.S. at 213–14 (determining the legal questions raised required interpretation of the Mine Act, which fell within the agency's expertise). Accordingly, an application of the *Thunder Basin* factors would not support a finding of jurisdiction over Count 3.

Finally, Plaintiff does not directly respond to Defendants' arguments that the APA has superseded any common-law *ultra vires* claim, Mot. 29–30, or that Plaintiff's APA claim in Count 3 has other threshold flaws that provide independent grounds to dismiss: DHS's determinations as to when and how to exercise its parole authority are committed to agency discretion by law and are thus not subject to APA review, and Plaintiff has failed to identify a particular agency action or statement that is reviewable under the APA. Mot. 31–33. Accordingly, the Court may dismiss Count 3 on these grounds.

**B.  Count 3 Does Not State an *Ultra Vires* Claim Under Any Theory.**

The Complaint does not state a claim that DHS's use and implementation of the "DHS Scheduling System" is *ultra vires.* Mot. 28–29. As an initial matter, the Rule challenged in this case concerns a limit on eligibility for asylum and does not purport to "provide for, prohibit, or otherwise set any policy regarding DHS's discretionary authority to make parole determinations for those who use the CBP One app." FAC ¶ 91 (quoting 88 Fed. Reg. at 31,331). Accordingly, Plaintiff cannot state a claim that the Rule or its appointment exception constitutes an *ultra vires* "mass parole program." *See* FAC ¶¶ 93–103.[4]

To the extent that Plaintiff seeks to challenge matters outside the Rule as *ultra vires*, Plaintiff does not come close to alleging that DHS is acting without "any colorable basis" in authority by granting parole to noncitizens who are processed at POEs after entering with a pre-scheduled appointment. *See Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011). Congress has expressly charged the Executive with discretionary authority to make parole determinations for arriving noncitizens. 8 U.S.C. § 1182(d)(5)(A). The parole statute provides that the Secretary of Homeland Security "may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.* Even if, as Plaintiff alleges, DHS were to "presume the [noncitizen who uses the CBP One app to schedule a time and place to present at a POE] satisfies the criteria necessary to be paroled into the United States," *see* FAC ¶ 98; *see also* Opp. 30–31, DHS would have at least a "colorable basis" to process those noncitizens for further individual consideration of eligibility for parole. Plaintiff points to no statutory limitation that precludes the use of a presumption when making a "case-by-case" parole determination, or that caps the number of noncitizens who may be granted parole. For example, the statute does not preclude a presumption that noncitizens from particular countries face widespread humanitarian

---

[4] The Opposition argues that the Defendants lack statutory authority to create exceptions to conditions on asylum eligibility, *see* Opp. 32–33, but those arguments are incorrect. *See supra* § III(A). Moreover, Count 3 does not contain any allegations related to these arguments.

issues, or that the parole of noncitizens who have submitted advance information via the CBP One™ app and passed national security and criminal checks would present a significant public benefit, so long as the agency determines that the standards for parole are met in each individual case.[5] Section 1182(d)(5)(A) sets no limit on how widespread an urgent humanitarian reason or significant public benefit may be, so long as there is a "case-by-case" determination. To state an *ultra vires* claim, Plaintiff must do more than "allege that the actions of the officer are illegal or unauthorized." *Danos*, 652 F.3d at 583 (quoting *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). It must point to a "specific statutory limitation" on the Executive's powers. *Naylor*, 530 F.2d at 1226. Plaintiff has not done so.

The Major Questions Doctrine does not alter this analysis. *See* Opp. 31–33. That doctrine is applied only in "extraordinary cases" where an agency invokes new, unanticipated regulatory power, such as power that falls outside its domain, *see West Virginia v. EPA*, 597 U.S. 697, 722–23 (2022); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000), or where it is relying on a "long-extant statute" to claim "unheralded power," *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014). It also applies only to agency action that has "vast political and economic significance" such as new regulatory action that directly impacts 80% or more of the nation, *Ala. Ass'n of Realtors v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (addressing nationwide eviction moratorium), or directly imposes vaccination and testing requirements on more than 84 million people, *Nat'l Fed'n of Ind. Business v. OSHA*, 142 S. Ct. 661 (2022) (addressing emergency temporary standard imposing COVID-19 vaccination and testing requirements to regulate workplace safety). Here, grants of parole to noncitizens seeking admission are not a new exercise of authority. "Every administration, including the Trump and Biden administrations, has utilized this authority to some extent." *Biden v. Texas*, 597 U.S. 785, 806 (2022); *see also supra* n.5. The use of parole for migrants fleeing humanitarian concerns in

---

[5] Indeed, there is a long history of the Executive using the authority under § 1182(d)(5)(A) to parole noncitizens of particular nationalities, often based on foreign policy concerns. *See, e.g.*, Cuban Family Reunification Program, 72 Fed. Reg. 65,588 (Nov. 21, 2007); Implementation of Haitian Family Parole Reunification Program, 79 Fed. Reg. 75581 (Dec. 18, 2014).

their home countries thus fits well within the statutory text and long historical tradition. Accordingly, this case does not present a scenario where the agency is using a "long-extant statute," *Util. Air Regulatory Grp.*, 573 U.S. at 324, or "making . . . policy judgments" outside its area of "expertise," *West Virginia*, 597 U.S. at 729. Nor does Plaintiff allege DHS's exercise of parole has the type of vast nationwide impact—such as direct, intrusive regulation of vast swaths of the nation—that has triggered the Major Questions Doctrine. Plaintiff asserts only indirect impact based on increased expenditures due to DHS exercising parole authority to release noncitizens. *See, e.g.*, Opp. 4–6. Accordingly, the Major Questions Doctrine does not apply, and the parole statute provides more than a "colorable basis" for DHS to exercise parole authority in the manner Plaintiff alleges. Accordingly, Count 3 does not state a claim.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Motion, this Court should dismiss Plaintiff's Complaint for lack of jurisdiction or, alternatively, for failure to state a claim.

Dated: May 30, 2024                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       *Principal Deputy Assistant Attorney General*

                                       WILLIAM C. PEACHEY
                                       *Director*

                                       EREZ REUVENI
                                       *Counsel*

                                       CHRISTINA P. GREER
                                       BRIAN C. WARD
                                       *Senior Litigation Counsel*

                                       By: */s/ Katherine J. Shinners*
                                       KATHERINE J. SHINNERS
                                       *Senior Litigation Counsel*
                                       D.C. Bar No. 978141
                                       U.S. Department of Justice, Civil Division
                                       Office of Immigration Litigation – DCS
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Tel: (202) 598-8259
                                       Fax: (202) 305-7000
                                       Email: katherine.j.shinners@usdoj.gov

                                       ELISSA P. FUDIM
                                       *Trial Attorney*

                                       *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of May 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff.

/s/*Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel